IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DAVID L. HENDRICKS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 6:14-CV-37 ) |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Plaintiff David L. Hendricks ("Hendricks"), proceeding *pro se*, challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Hendricks asserts that the Administrative Law Judge ("ALJ") erred by failing to properly (1) recognize his pain from a mental and physical standpoint, (2) examine findings of fact and conclusions of law, (3) explain the credibility assessment, (4) consider evidence from Rehab Associates of Central Virginia, and (5) consider evidence from the University of Virginia ("UVA") spine center.[1] I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence

---

[1] Neither Hendricks nor the Commissioner requested oral argument in this case. To the extent Hendricks' brief requests oral argument, I find that a hearing will not aid in the decisional process, and is thus unnecessary.

1

exists to support the Commissioner's conclusion that Hendricks failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Hendricks filed for DIB on May 13, 2011, claiming that his disability began on April 17, 2011.[3] R. 172. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 71, 108. On May 8, 2013, ALJ Marc Mates held a hearing to consider Hendricks' disability claim. R. 42–70. Hendricks was represented by an attorney at the hearing, which included testimony from vocational expert Arthur M. Brown. Id.; R. 149.

On June 13, 2013, the ALJ entered his decision analyzing Hendricks' claim under the familiar five-step process[4] and denying his claim for benefits. R. 17–27. The ALJ

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

[3] Hendricks' date last insured is December 31, 2015. R. 72. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not,

found that Hendricks suffered from the severe impairments of right shoulder difficulty and other myalgias. R. 28. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 29. The ALJ further found that Hendricks retained the RFC to perform light work, except that he can occasionally lift twenty pounds and frequently lift ten pounds; stand or walk about six hours; and sit about six hours during an eight-hour workday. R. 30. Hendricks also cannot use his dominant right arm more than occasionally and relies upon his non-dominant left arm; he cannot climb ladders, ropes, or scaffolds, but can balance and stoop occasionally. Id. He must avoid concentrated exposure to temperature extremes, wetness, humidity, and hazards, such as unprotected heights and moving machinery. Id. The ALJ determined that Hendricks could not return to his past work (R. 38), but that he could perform other work that exists in significant numbers in the national economy, such as cashier and courier. R. 39. Thus the ALJ concluded that Hendricks was not disabled. Id. On July 24, 2014, the Appeals Council denied Hendricks' request for review (R. 1–4), and this appeal followed.

## ANALYSIS

### Pain and Credibility

Hendricks argues that the ALJ erred because he failed to recognize his pain from a mental and physical standpoint and because the ALJ did not properly explain his credibility assessment. At the hearing before the ALJ, Hendricks testified that he could

---

(5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

only stand for an hour at the most (R. 48), that he had burning pain in his back (R. 49), and that he occasionally lost feeling in his left leg, which sometimes caused him to fall. Id. Hendricks also testified that the heaviest weight he was able to lift was a plate. R. 50. Hendricks' medical records also reveal that he suffered from anxiety. See, e.g., R. 334.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Hendricks' subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Hendricks met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Hendricks' ability to work. Id. at 594–95.

In this case, the ALJ recognized that Hendricks suffers from a severe impairment that causes him pain. R. 28. However, the issue for the ALJ is not whether Hendricks experiences pain, but whether that pain is so severe as to be disabling. The ALJ found that Hendricks' statements regarding his pain were not entirely credible and were not supported by the relatively conservative treatment he received, the findings made by his doctors, or the reports of the reviewing physicians in the record. R. 31–38. The ALJ thoroughly reviewed Hendricks' medical records in support of his conclusion on Hendricks' credibility and pain.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir.

1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) After a review of the record as a whole, I find that substantial evidence supports the ALJ's determination that Hendricks' testimony regarding his pain is only partially credible, and that Hendricks is capable of performing the range of light work set forth in the ALJ's opinion.

Hendricks' treatment records do not reflect disabling pain. On April 18, 2011, Hendricks saw Brenda S. Waller, M.D., complaining of shoulder and back pain that was 4 on a scale of 1 to 10. R. 298. Dr. Waller noted that "[m]edications are continuing to help" and she restricted Hendricks to lifting only thirty pounds at work. R. 301. On June 16, 2011, Hendricks followed up with Dr. Waller, again complaining of shoulder pain that accompanied activity. R. 302. Dr. Waller prescribed Flexeril and Oxycodone. Id. On August 15, 2011, at a follow up appointment with Dr. Waller, Hendricks reported that his shoulder pain was "managed well with medication, but would be severe without." R. 316. At this visit, Hendricks also reported back pain, and Dr. Waller reviewed Hendricks' prescriptions but did not make any changes. Id. On October 14, 2011, Dr. Waller's notes reveal that Hendricks' pain was "relieved by medication" but that physical therapy was causing more pain. R. 321.

Hendricks underwent an MRI on November 28, 2011, which revealed normal spinal alignment, no disc herniation, and no compromise of the central canal or neural foramen. R. 347. Other radiological imaging revealed normal results on April 21, 2011, and June 23, 2010. R. 348–49. Hendricks continued to see Dr. Waller and Trudy Shahady, M.D., for pain and anxiety. On March 22, 2012, Hendricks reported to Kenneth Swanson, FNP, and Dr. Shahady, that he was "very happy" with the Klonopin he had

been prescribed for his anxiety and that he was getting along better with his family. R. 487. On April 5, 2012, Dr. Waller's records indicate that Hendricks was "stable with current medications" and that "Klonopin is helping with anxiety and working well with current medications." R. 456.

Overall, Hendricks' medical records indicate routine and conservative treatment, which the ALJ found "does not support a contention of total debility." R. 37. These treatment records do not support Hendricks' claim that his pain was so severe as to be disabling. Instead, they support the ALJ's conclusion that Hendricks' statements regarding the severity of his pain were not entirely credible.

Hendricks' statements about his daily activities also undermine his complaints of debilitating pain. R. 225–232. On June 22, 2011, Hendricks reported that he could help around the house "a little", make sure his children ate lunch, read, watch TV, prepare microwave meals, vacuum, put away his children's toys, go shopping with his fiancé, go to church every Sunday, and go to the store once or twice per week. Id. These activities alone do not necessarily imply that Hendricks is able to work. However, these activities, along with the medical evidence in the record, paint a picture of a person who is not totally debilitated by pain. Therefore, Hendricks' credibility as to the severity of his pain is undermined by his statements about his daily activities.

The ALJ also considered the opinions of two state agency physicians who reviewed Hendricks' record and found him to be not disabled. R. 37. On August 2, 2011, Thomas M. Phillips, M.D., reviewed Hendricks' record and concluded that he was not disabled. R. 78. Dr. Phillips determined that Hendricks' pain and symptoms did create some limitations in his ability to perform his past work, but that he was able to perform other work that is less demanding. R. 80. On December 14, 2011, Robert Keeley, M.C.,

also determined that Hendricks was not disabled, despite acknowledging Hendricks' pain. R. 91. The ALJ gave partial weight to these assessments. R. 37. The ALJ also considered the medical source statement from Dr. Waller, Hendricks' treating physician. Dr. Waller concluded on April 15, 2013, that Hendricks' lifting abilities were severely limited (i.e. to rarely lifting ten to fifty pounds), that he could stand or walk less than two hours in an eight-hour workday, and that he would need to miss more than three days of work per month. R. 482–85. However, the ALJ gave little weight to this opinion because the report contradicted an April 2011 restriction on Hendricks' lifting ability and because the report clearly relied, at least in part, on Hendricks' personal reports to Dr. Waller, and not on the objective evidence contained in Dr. Waller's other treatment notes. For example, Dr. Waller's report states that Hendricks' limitations have existed for ten years, despite her note that she has only been treating him for three years. R. 485. Dr. Waller's medical source statement also conflicts with her notes that reflect conservative and effective treatment and with the other evidence in the record, and substantial evidence supports the ALJ's decision to give the statement little weight.

The ALJ does not assert that Hendricks is pain free. On the contrary, the ALJ recognized that Hendricks suffers from severe conditions that limit his ability to function. The issue, however, is not whether Hendricks has physical impairments or experiences pain, but whether those impairments and pain prevent him from performing the light jobs identified by the vocational expert. See Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays v. Sullivan, 907 F.2d 1453, 1457–58 (4th Cir. 1990)) ("An individual does not have to be pain-free in order to be found 'not disabled.'"). The ALJ accounted for the limitations posed by Hendricks' impairments by limiting him to a range of light work. The ALJ restricted Hendricks' ability to lift, sit,

7

stand, use his dominant arm, climb ramps and stairs, balance, crawl, stoop, crouch, climb ladders, ropes and scaffolds, and be exposed to workplace hazards (R. 15). Further, the ALJ's RFC is consistent with the medical opinions in the record.

It is not the role of this court to determine whether Hendricks' testimony was fully credible. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Rather, the question for the court is whether the ALJ applied the proper legal standard in assessing Hendricks' credibility, and whether the ALJ's decision is supported by substantial evidence. Id. Here, the ALJ's credibility determination related to Hendricks' pain is supported by substantial evidence and should not be disturbed.

**Consideration of Evidence in the Record**

Next, Hendricks argues that the ALJ did not properly look at or use evidence from Kevin M. Cope, PT, at Rehab Associates of Central Virginia ("Rehab Associates"), (Exhibit 12F) and from Rebecca Lehman, PA-C, at the UVA Spine Center Orthopedics ("UVA") (Exhibits 18F and 19F).

"While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered." Brewer v. Astrue, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (citing Green v. Shalala, 51 F.3d 96, 101 (7th Cir.1995) ("A written evaluation of each piece of evidence or testimony is not required.")); see also Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as

8

a whole); Phillips v. Barnhart, 91 Fed. App'x 775, 780 n. 7 (3d Cir. 2004) ("[T]he ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.").

Here, the ALJ clearly addressed some of the medical records from Rehab Associates. See R. 34. The ALJ wrote:

> a report from Rehab Associates of Central Virginia, where the claimant received physical therapy, indicated that he had a moderate limitation in standing and a moderate/severe limitation in lifting (Ex. 11 F, pp. 3–9). An Oswestry test, on which the clamant scored 48%, was said to indicate severe disability. However, other muscle strength testing indicated

| Measurement | Right Strength | Left Strength |
| --- | --- | --- |
| Extensor Hallucis Longus | 5/5 | 5/5 |
| Flexor Hallucis Longus | 5/5 | 5/5 |
| Tibialis Anterior | 5/5 | 5/5 |
| Hip Flexors | 5/5 | 5/5 |
| Gastrocnemius | 5/5 | 5/5 |
| Hamstring | 5/5 | 5/5 |
| Quadriceps | 5/5 | 5/5 |
| Rectus/Transcerse Abdominus | 4/5 | 4/5 |
| Gluteus Maximus | 4-/5 | 4-/5 |
| Hip Lateral Rotators | 4/5 | 4/5 |
| Hip Medial Rotators | 4/5 | 4/5 |

R. 34. In this paragraph of his opinion, the ALJ referred to Exhibit 11F, pages 3 through 9, and noted that Hendricks had taken an Oswestry test, which is found in the record at Exhibit 12F. Hendricks argues that the ALJ erred by failing to consider additional records from Rehab Associates at Exhibit 12F, pages 8 through 54. However, it is unclear from the opinion whether the ALJ actually failed to consider Exhibit 12F because he notes in

his opinion the results of the Oswestry test which was included as part of Exhibit 12F. The remainder of Exhibit 12F includes only additional treatment records and progress notes from Rehab Associates (R. 390–436) and there is nothing in these additional records that contradicts or calls into question the records in Exhibit 11F. The ALJ ultimately found that Hendricks does suffer from the severe impairment of right shoulder difficulty and other myalgias (R. 28), and any failure to discuss the documents at Exhibit 12F was not error. In fact, Exhibit 12F supports the ALJ's conclusions that Hendricks experienced pain from his shoulder and back, and that his course of treatment was conservative and not indicative of total disability.

Hendricks next faults the ALJ for failing to discuss the UVA records at Exhibit 18F and Exhibit 19F. These records consist of minimal treatment records from the UVA Spine Center. Exhibit 18F includes pre-visit instructions, an appointment confirmation, and treatment notes from Ms. Lehman. Exhibit 19F includes records from a July 24, 2013 visit and a July 30, 2013 follow up appointment also with Ms. Lehman. R. 496–500. During these visits, Ms. Lehman concluded that Hendricks has "mild facet wear and tear or arthritis." R. 498. Ms. Lehman believed that this, along with Hendricks' paraspinal muscles, is what was causing his back pain. Id. She concluded that there were no pinched nerves in Hendricks' back, and recommended that he continue to work with his primary care and pain management doctors. Id. While Ms. Lehman noted that Hendricks had some minimal facet degenerative changes, mild diffuse disc bulge, and mild facet arthropathy, she concluded that there was no evidence of thoracic spine abnormality and no evidence of central canal narrowing or neuroforaminal stenosis. R. 500. These records again do not contradict the other medical opinions and treatment in Hendricks' record, which the ALJ concluded did not reflect a disabling impairment. The ALJ's failure to

expressly discuss these records in his opinion was not error.

To the extent Hendricks believes the ALJ did not properly consider Mr. Cope's and Ms. Lehman's opinions on the severity of his disability, the ALJ was not required to give these opinions controlling weight. Neither a physical therapist nor a physician's assistant is considered an acceptable medical source under the Act. See 20 C.F.R. §404.1513. Thus the ALJ's duty to consider these records was discharged when he reviewed them and considered them as part of the record as a whole. Any failure to include specific citations to these records in his opinion was not error.

**Findings of Fact and Conclusions of Law**

Finally, Hendricks argues that the ALJ failed to properly examine the findings of fact and conclusions of law. Pl.'s Br. 2. I have reviewed the entire record in this case, the ALJ's opinion, and the applicable law and I find that the ALJ committed no error and that substantial evidence supports the ALJ's conclusions.

## CONCLUSION

For the foregoing reasons, I **AFFIRM** the final decision of the Commissioner and **GRANT** her motion for summary judgment.

Entered: March 9, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge